UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

William Seaver

v.                                    Civil No. 23-cv-221-LM
                                      Opinion No. 2025 DNH 129 P
Casella Sales & Marketing,
Inc. et al

# O R D E R

Plaintiff William Seaver brings this action against his former employer,
Casella Sales & Marketing, Inc. ("Casella"), and its parent company Fluid-Flow
Products, Inc. ("Fluid-Flow"), alleging that his termination constituted unlawful
discrimination and retaliation under the Americans with Disabilities Act ("ADA"),
42 U.S.C. §§ 12112(a) & 12203(a), the Age Discrimination in Employment Act
("ADEA"), 29 U.S.C. § 623(a)(1), and New Hampshire's Law Against Discrimination,
RSA 354-A:7, -A:19. Presently before the court is defendants' motion for summary
judgment. Doc. no. 18. Seaver objects in part. Doc. no. 21. For the following reasons,
defendants' motion (doc. no. 18) is granted in part and denied in part.

## STANDARD OF REVIEW

A movant is entitled to summary judgment where he "shows that there is no
genuine dispute as to any material fact and [that he] is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if "the evidence
is such 'that a reasonable jury could resolve the point in favor of the nonmoving
party.'" Quintana-Dieppa v. Dep't of Army, 130 F.4th 1, 7 (1st Cir. 2025) (quoting

Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018)). A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." Id. (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017)). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Minturn v. Monrad, 64 F.4th 9, 14 (1st Cir. 2023).

## BACKGROUND

I.    Factual Background[1]

Defendants are suppliers for pharmaceutical and biotechnology manufacturing companies. Fluid-Flow acquired Casella in 2017. Seaver has thirty years' experience as a salesman for companies like Casella that supply processing equipment for the biotechnology industry. Prior to joining Casella, Seaver worked for TEK Stainless for twenty-one years. He was Director of Sales at TEK Stainless. At TEK Stainless, Seaver supervised seven other salespeople, conducted regular reviews of his staff, and made hiring and firing decisions, while also fulfilling his own sales responsibilities.

In May 2018, defendants hired Seaver to work for Casella as a "Sales Specialist" in Casella's outside sales group.[2] The hiring decision was made by Bob

---

[1] The facts are recited in the light most favorable to Seaver, the nonmovant.

[2] Casella employed two groups of salespeople: "outside" salespeople and "inside" salespeople. The outside salespeople were more experienced and were responsible for identifying sales prospects, developing new business opportunities, and maintaining client relationships. Inside salespeople were less experienced and were akin to customer service representatives.

Casella (who owned Casella prior to its acquisition by Fluid-Flow) and Janine Parsons (who was then functioning as Casella's Chief Operating Officer before later becoming Branch Manager when Bob Casella retired in 2019). Along with Seaver, Casella employed two other Sales Specialists in their outside sales group: Doug Cavanaugh and Leighton Terwilliger. Seaver and Terwilliger had sales territory in New England, while Cavanaugh covered the mid-Atlantic.

The May 2018 offer letter from Casella to Seaver set forth Seaver's salary structure for the Sales Specialist position. Seaver's base salary for the 2018-2019 fiscal year was $130,000, and he could earn a bonus if he met the sales goal set by Casella, or a percentage of that sales goal, for that fiscal year.

Seaver began working for Casella in May 2018. Between June 2018 and August 2019, Seaver was hospitalized at least six times from complications due to his medical conditions, which include Crohn's disease and diabetes. During this time, Seaver experienced multiple instances of acute renal failure, diabetic shock, and a blood clot. He also had several doctors' appointments during this time which required him to take some or all of a day off from work. Seaver notified Parsons when he needed to take time off from work for a medical appointment or because of a hospitalization. Seaver would use "paid time off," or "PTO," for this time off work. Other than one doctor's appointment that conflicted with a sales meeting, Parsons never denied Seaver's requests for PTO.

Despite his numerous hospitalizations and medical appointments during the 2018-2019 fiscal year, Seaver met 100% or more of his sales goal for that fiscal year

and earned a $25,000 bonus. In addition, in March 2019, defendants promoted Seaver from Sales Specialist to Sales Manager of Casella's outside sales group. As Sales Manager, Seaver was responsible for supervising Terwilliger and Cavanaugh, the other two salespeople in outside sales.

In July 2019, defendants hired Jeff Norford as Executive Vice President. Norford oversaw the "Life Sciences" business unit within Fluid-Flow, a group of eleven companies owned by Fluid-Flow which included Casella. In that role, Norford was Parsons' manager. Parsons could not make hiring and firing decisions without Norford's approval. In addition, Norford took over Seaver's managerial responsibilities, though Seaver retained the title of Sales Manager.

The undisputed record shows that Norford was aware of at least two of Seaver's hospitalizations. Parsons testified at her deposition that, after Seaver went into a diabetic shock at Logan Airport and then to the hospital, she and Norford had a brief conversation about that hospitalization. On another occasion, while Seaver was in the hospital, Norford telephoned him (unaware that he was in the hospital) to discuss a work matter. Seaver told Norford he was in the hospital and would not be available that day or the next.

In addition, Seaver claims that Norford made remarks from which a jury could reasonably conclude that Norford viewed Seaver's medical leave as problematic. For example, Seaver testified at his deposition that he overheard Norford tell another executive at a sales meeting in September 2019 that "Seaver's getting expensive." Doc. no. 18-3 at 22. According to Seaver, this comment was

made about a month after Seaver was hospitalized for seven days for acute renal failure. In addition, Seaver claims that, at a training seminar in the last quarter of 2019, Norford was "visibly upset" when Seaver told him he had to leave early for a medical appointment. According to Seaver, Norford would later tell him that his decision to leave the seminar early was a "bad move." Then, in February 2020, Seaver claims that he overheard Norford say during a phone call with Fluid-Flow's CEO that he "was an expensive employee to maintain." Id. at 25.

At the onset of the COVID-19 pandemic in March 2020, Fluid-Flow's top executives instructed Parsons to make recommendations for layoffs within Casella. Norford was among the executives instructing Parsons to identify candidates for layoffs. Initially, Parsons recommended laying off only two employees from within the inside sales group. However, Fluid-Flow's Chief Operating Officer informed her that additional cuts were necessary. At that point, Parsons decided to recommend Seaver for termination. Norford signed off on Parsons' decision, and Seaver was let go on April 8, 2020. Seaver was fifty-eight years old.

Of the seventeen employees that defendants let go on April 8 or April 9, 2020, fourteen were age forty or older. Less than a week after Seaver's termination, defendants reached out to a salesperson in his thirties with another company to fill a sales position. And, about a month after his termination, Terwilliger told Seaver that he overheard Norford stating they were looking for "someone in their forties" to fill Seaver's position. On June 17, 2020, defendants posted a job opening for a

salesperson in Casella's outside sales group. The person defendants eventually

hired was approximately forty-five years old.

II.    <u>Procedural Background</u>

　　　　After filing administrative complaints with the Equal Employment

Opportunity Commission and the New Hampshire Commission for Human Rights,

Seaver filed the instant action in New Hampshire state court on February 24, 2023.

The complaint contains the following claims:

- Count I: Disability discrimination in violation of the ADA and RSA chapter 354-A;

- Count II: Retaliation in violation of the ADA and RSA chapter 354-A;

- Count III: Age discrimination in violation of the ADEA and RSA chapter 354-A;

- Count IV: Retaliation for exercising Seaver's rights under the Family and Medical Leave Act, 29 U.S.C. § 2615;

- Count V: Wrongful discharge in violation of New Hampshire common law;

- Count VI: Failure to pay owed wages in violation of the New Hampshire Wage Law; RSA 275:44; and

- Count VIII:[3] Breach of contract in violation of New Hampshire common law.

　　　　Defendants removed Seaver's action to this court on April 4, 2023. After

several assented-to extensions of deadlines, defendants filed the instant motion for

summary judgment as to all of Seaver's claims on July 28, 2025. Seaver objects in

_____

[3] The complaint does not contain a Count VII.

part. He does not object to dismissal of Counts IV through VIII. Nor does he object

to dismissal of Count I to the extent the disability discrimination claim alleged

therein is premised on a theory of harassment or hostile work environment. He

otherwise disputes defendants' entitlement to judgment as a matter of law on

Counts I through III.

## DISCUSSION

Given Seaver's concessions as to Counts IV through VIII, the court deems

those counts voluntarily dismissed and grants defendants' motion as to those

counts. See Fed. R. Civ. P. 41(a)(2). The court will resolve the parties' arguments

with respect to Counts I through III in turn.

I.  There Is a Genuine Dispute of Material Fact as to Whether Defendants'
    Stated Reason for Seaver's Termination Is Pretext for Disability-Based
    Discrimination

In Count I, Seaver contends that defendants terminated him because he took

leave for his medical conditions in violation of the ADA and RSA chapter 354-A. The

parties agree that Seaver's federal and state claims are governed by the same legal

standards; as such, the court will consider them together. See Lieber v. Marquis

Mgmt., LLC, 691 F. Supp. 3d 334, 346 (D.N.H. 2023).

Disability discrimination claims generally proceed under the familiar

McDonnell Douglas burden-shifting framework. Tobin v. Liberty Mut. Ins. Co., 433

F.3d 100, 104 (1st Cir. 2005). First, the plaintiff must make out a prima facie case.

Id. To establish a prima facie case of disability discrimination, a plaintiff must show

that he: "(1) has a disability within the meaning of the ADA; (2) is qualified to

perform the essential functions of the job, with or without reasonable accommodations; and (3) was subject to an adverse employment action based in whole or in part on his disability." Sutherland v. Peterson's Oil Serv., Inc., 126 F.4th 728, 738 (1st Cir. 2025) (quoting Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 186 (1st Cir. 2011)). "The burden of establishing a prima facie case . . . is not onerous." Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981).

If the employee carries his modest burden, "the burden then shifts to defendants to articulate a legitimate, non-discriminatory reason for their employment decision and to produce credible evidence to show that the reason advanced was the real reason." Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 154 (1st Cir. 2009) (brackets omitted) (quoting Tobin, 433 F.3d at 105). If the employer meets its burden of production, "the burden shifts back to the plaintiff to produce evidence 'to establish that defendants' non-discriminatory justification is mere pretext, cloaking discriminatory animus.'" Id. (brackets omitted) (quoting Tobin, 433 F.3d at 105). Although the McDonnell Douglas framework shifts the burden of production, the "ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the plaintiff remains at all times with the plaintiff." Ames v. Ohio Dep't of Youth Servs., 605 U.S. 303, 308 n.2 (2025) (quoting Burdine, 450 U.S. at 253).

Beginning with Seaver's prima facie case, defendants do not contest prongs one (whether Seaver has produced evidence from which a reasonable trier of fact could conclude that he has a disability) or two (whether he was qualified to perform

the essential functions of his job at Casella). Defendants do contest prong three and contend that no reasonable trier of fact would conclude that Seaver was terminated based in part on his disability. The court disagrees. Construing the evidence in the light most favorable to Seaver and drawing all inferences in his favor, Seaver has produced evidence from which the jury could conclude that Norford twice complained to high-ranking executives that Seaver was "expensive," and that he expressly disapproved of Seaver leaving a work obligation for a medical appointment. A jury could draw the reasonable inference that Norford's joint decision with Parsons to terminate Seaver in April 2020 was based at least in part on Seaver's medical conditions.

In arguing to the contrary, defendants contend that Seaver testified in his deposition that he overheard the first "expensive" comment from Norford in September 2018. Because defendants did not hire Norford until July 2019, defendants contend that no reasonable jury could conclude that Norford ever made this comment. However, Seaver subsequently clarified in a sworn declaration attached to his summary judgment objection that he was simply mistaken as to the year at his deposition. See doc. no. 21-2 at 1. This is a factual dispute that the court may not resolve at summary judgment. E.g., Garda v. Kohl's Inc., Civ. No. 21-cv-215-AJ, 2022 WL 1749196, at *2 (D.N.H. Apr. 4, 2022). A reasonable jury could credit Seaver's testimony that he overheard this statement in September 2019.

Defendants further argue that this court should not "credit[ ]" Seaver's claim that he overheard Norford call him "expensive" in February 2020 because Seaver

9

could not provide any "corroborating information or detail" regarding Norford's alleged comment and because Seaver's claim is contrary to Norford's deposition testimony. Doc. no. 18-1 at 10. But, as with defendants' prior contention, it is not this court's role at summary judgment to determine which witness should be credited; it is merely to determine whether a reasonable jury could credit Seaver's testimony. While defendants point to evidence in the record to discredit Seaver, this court "may not make credibility determinations or weigh the evidence." Garda, 2022 WL 1749196, at *2 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000)).

Finally, defendants argue that Norford's admonishment to Seaver that it was a "bad move" to leave a sales meeting for a doctor's appointment does not support Seaver's prima facie case. According to defendants, there is no evidence that Seaver was disciplined for leaving the meeting early. However, a jury could reasonably construe Norford's statement as evidence of Norford's hostility toward Seaver for having "expensive" medical conditions that required him to take time off work. A reasonable jury could also draw the inference that Norford's desire to be rid of an expensive employee drove his decision to approve of Seaver's termination in April 2020 when given a directive by upper management to cut costs.

Because Seaver has produced evidence from which a reasonable trier of fact could find a prima facie case of disability discrimination, the burden of production shifts to defendants to articulate a legitimate, nondiscriminatory reason for his

termination. Defendants meet this burden. Defendants claim they had a dramatic and sudden need to cut costs in late March 2020 due to the COVID-19 pandemic.

Parsons and Norford both testified at their depositions that they received instruction from Fluid-Flow's executive suite in late March 2020 to reduce staffing in light of the anticipated effect of the pandemic on their bottom line. See doc. no. 18-2 at 9; doc. no. 18-4 at 14-15. Parsons initially recommended only two employees within Casella's inside sales group for termination but was told by Fluid-Flow's executives that additional cuts would be necessary. At that point, she identified Seaver as a candidate for termination. According to Parsons, she selected Seaver because his sales territory overlapped with Terwilliger's and Terwilliger had a stronger knowledge base in Casella's emerging "single-use" product line—i.e., products that were made with the purpose of being used a single time and then discarded. Norford testified that he signed off on Parsons' decision to recommend Seaver for termination for performance-based reasons.

Because defendants have articulated a non-discriminatory reason for Seaver's termination supported by credible evidence, Seaver must identify evidence from which a jury could conclude that defendants' reason is a pretext for discrimination. Cocuzzo v. Trader Joe's E. Inc., 121 F.4th 924, 931 (1st Cir. 2024). A plaintiff may rely upon a variety of circumstances to support an inference of pretext. See Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168-69 (1st Cir. 1998). For example, "[s]tatements by supervisors carrying the inference that the supervisor harbored animus against protected classes of people or conduct are clearly probative

of pretext, even if that inference is not the only one that could be drawn from the comment." Id. at 171 (citations omitted). Such comments have greater probative value when made close-in-time to the challenged employment decision. Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 27 (1st Cir. 2015). In addition, the plaintiff may produce evidence tending to show that the employer's stated reasons contain "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" such that a reasonable jury could find "that the employer did not act for the asserted non-discriminatory reasons." Hodgens, 144 F.3d at 168 (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)).

"[W]here a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated reason is a pretext for discrimination, courts must be 'particularly cautious' about granting the employer's motion for summary judgment." Id. at 167 (quoting Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983)). A court should ordinarily deny the employer's summary judgment motion when, viewing the evidence in the light most favorable to the plaintiff, there is "minimally sufficient evidence" that the employer's reason is pretext for discrimination. Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 140 (1st Cir. 2012) (emphasis omitted) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)). And, depending on the circumstances, a factfinder can infer discriminatory animus from evidence of pretext along with the evidence supporting the plaintiff's prima facie case. Joseph v. Old Dutch Mustard, 560 F. Supp. 3d 504, 520 (D.N.H. 2020).

Seaver has produced sufficient evidence to withstand summary judgment. While it is undisputed that Fluid-Flow's executive suite instructed Parsons to lay off employees as part of an overall reduction in force, a reduction in force does not provide free license to discriminate against a disabled person. "Even if the employer has a compelling reason wholly unrelated to the disabilities of any of its employees to reduce the size of its work force, this does not entitle it to use the occasion as a convenient opportunity to get rid of its disabled workers." Hodgens, 144 F.3d at 167 (quoting Matthews v. Commonwealth Edison Co., 128 F.3d 1194, 1195 (7th Cir. 1997) (Posner, J.)). Parsons and Norford jointly decided to terminate Norford in late March or early April 2020. As recently as February 2020, Norford had made comments that Seaver was expensive. A reasonable jury could infer from Norford's comments, made close-in-time to his joint decision with Parsons to terminate Seaver, that defendants' stated reason for Seaver's termination is a pretext for discrimination. Id. at 171; Soto-Feliciano, 779 F.3d at 27.

Moreover, a reasonable jury could conclude that defendants' justifications for Seaver's termination suffer from inconsistencies. Norford testified at his deposition that the decision to select Seaver for termination was based on Seaver's performance—more specifically, that Seaver was failing to sell Casella's "full product offering" and was not adequately performing his managerial responsibilities. Doc. no. 18-4 at 15. However, it is undisputed that Seaver met 100% or more of his sales goal in the 2018-2019 fiscal year and that he earned a $25,000 bonus and a promotion during that time. And to the extent Norford

believed Seaver was not meeting sales goals, Norford acknowledged that defendants could have placed Seaver on a "performance improvement plan" but did not do so. Id. Finally, with respect to Seaver's managerial responsibilities, the parties dispute whether Seaver had any managerial responsibilities left to perform after Norford joined the company in July 2019.

Moreover, while defendants claim they terminated Seaver for budgetary reasons, it is undisputed that they posted an open position for a sales role within Casella's outside sales group approximately two months after they fired Seaver. While defendants assert that they made this decision once they realized the pandemic would not have as drastic an effect on their bottom line as anticipated, it is not this court's role at summary judgment to make factual findings as to what led defendants to post this position. Viewing the evidence in the light most favorable to Seaver, a jury could infer from defendants' decision to hire a new salesperson in June 2020 that the budgetary justification offered for Seaver's April 2020 firing is pretextual.

For these reasons, Seaver has produced sufficient evidence from which a jury could reasonably find that defendants' stated reason for his termination is a pretext for discrimination. No more is needed to withstand summary judgment.

II.    <u>Defendants Have Failed to Show That They Are Entitled to Judgment As a Matter of Law on Seaver's Retaliation Claim</u>

In Count II, Seaver claims that his termination was unlawful because it was in retaliation for exercising his rights under the ADA and RSA chapter 354-A. The

14

parties do not dispute that Seaver's federal and state retaliation claims are governed by the same legal standards. Accordingly, the court considers them together.

As with the disability-discrimination claim asserted in Count I, Seaver's retaliation claim is analyzed under the McDonnell Douglas burden-shifting framework. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013). "To make out a prima facie retaliation claim, the plaintiff must show that: '(1) [he] engaged in protected conduct; (2) [he] experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.'" Id. (quoting Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 25 (1st Cir. 2004)). If the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to "articulate a legitimate, non-retaliatory reason for its employment decision." Id. (quoting Calero-Cerezo, 355 F.3d at 26). Then, if the defendant carries its burden, "the plaintiff must show that the proffered legitimate reason is pretextual and that 'the job action was the result of the defendant's retaliatory animus.'" Id. (quoting Calero-Celezo, 355 F.3d at 26).

Defendants take issue only with prong three.[4] Defendants contend that they are entitled to summary judgment as to Seaver's retaliation claim because no

---

[4] Unlike Seaver's discrimination claim, the retaliation claim requires proof that Seaver engaged in protected conduct. In his complaint, Seaver contends that he engaged in protected conduct by "communicating about his disabilities/medical conditions and their effect on him, and taking time off for them." Doc. no. 1-1 at 9. It

reasonable trier of fact would find a causal connection between Seaver's medical leave and his termination. Defendants point out that, with one exception, Parsons granted Seaver all the time off that he requested, and that Parsons was the one who made the initial recommendation to terminate Seaver. But, as with the discrimination claim in Count I, a reasonable jury could find that Parsons lacked authority to terminate Seaver without Norford's approval, and that Norford approved Seaver's termination because he believed that Seaver's recurrent medical leaves made him an expensive employee. Construing the evidence in the light most favorable to Seaver, a reasonable jury could find a causal connection between Seaver's medical leave and his termination.

Defendants develop no other argument that they are entitled to judgment as a matter of law on Seaver's retaliation claim. As such, their motion is denied as to that claim.

---

is possible this may not constitute protected conduct under the ADA. See Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 102 n.10, 106 (1st Cir. 2007) (explaining that, while a request for a reasonable accommodation constitutes protected activity under the ADA, a request for time off may or may not constitute an accommodation request); see also Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 813 (7th Cir. 2015) (holding that "intermittently requesting days off" to manage a diabetic condition did not constitute a request for an accommodation). However, defendants do not argue that no reasonable trier of fact would find that Seaver engaged in protected conduct. As such, the court does not consider this possibility. See Feliciano-Muñoz, 970 F.3d 53, 62 (1st Cir. 2020) ("The party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists."); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . .").

III.    There Is a Genuine Dispute of Material Fact as to Whether Defendants'
        Stated Reason for Seaver's Termination Is Pretext for Age-Based
        Discrimination

In Count III, Seaver claims he was terminated on the basis of age in violation

of the ADEA and RSA chapter 354-A. As with Seaver's other claims, the parties

agree that Seaver's state and federal age discrimination claims are governed by the

same substantive standards, so the court analyzes them together.

The court's analysis of Seaver's age-discrimination claim proceeds under the

McDonnell Douglas framework. Lahens v. AT&T Mobility P.R., Inc., 28 F.4th 325,

334 (1st Cir. 2022). Where a plaintiff was terminated as part of an overall reduction

in force, a successful prima facie showing requires proof that: "(i) he was at least

forty years old at the time of his termination; (ii) he was meeting the employer's

legitimate performance expectations; (iii) he was terminated from his employment;

and (iv) 'the employer did not treat age neutrally or that younger persons were

retained in the same position.'"[5] Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R.,

Inc., 999 F.3d 37, 50 (1st Cir. 2021) (quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d

836, 842 (1st Cir. 1993)). "This burden is not onerous." Id. at 51 (quoting Caraballo-

Caraballo v. Corr. Admin., 892 F.3d 53, 57 (1st Cir. 2018)). If the employee meets

his modest burden, the burden shifts to the employer to "articulate a legitimate,

---

[5] Where the termination was not part of a reduction in force, the fourth prong
of the prima facie case requires proof that the plaintiff "was replaced by a person with
roughly equivalent job qualifications." Zampierollo-Rheinfeldt, 999 F.3d at 51 n.7
(quoting Leblanc, 6 F.3d at 842). No such proof is required in reduction-in-force cases.
Id. Hence, the parties' wrangling about whether the June 2020 job posting was for
Seaver's old job (i.e., for Seaver's replacement) is immaterial.

non-discriminatory reason" for the termination. Id. (quoting Theidon v. Harvard Univ., 948 F.3d 477, 495 (1st Cir. 2020)). If the employer does so, the plaintiff must then demonstrate that the employer's stated reason is a pretext for age discrimination. Id.

Seaver's age discrimination claim is sufficient to survive summary judgment. With respect to Seaver's prima facie case, it is undisputed that Seaver was over forty years old at the time of his termination. In light of Seaver's resume and his performance and promotion while at Casella, a jury could reasonably conclude that he was qualified for the position from which he was terminated. As for whether defendants treated age neutrally in carrying out their reduction in force, defendants' interrogatory answers reveal that fourteen of the seventeen employees terminated on April 8 and 9, 2020 were forty years of age or older. See doc. no. 18-5 at 14-32; doc. no. 21-11 at 2; see also Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1115 (1st Cir. 1989) (statistical evidence may be used to support claim of age discrimination). Viewing the evidence in the light most favorable to Seaver and drawing all reasonable inferences in his favor, a jury could find Seaver's prima facie case satisfied.

Applying that same favorable standard of review, a reasonable jury could conclude that defendants' stated reason for Seaver's termination is pretext for age discrimination. First, there is the aforementioned evidence that almost all employees selected for termination were forty years old or older. And, while statistical evidence on its own rarely suffices to overcome summary judgment on an

18

age discrimination claim, see LeBlanc, 6 F.3d at 848, Seaver has also produced evidence that Norford was motivated by age-based considerations in jointly deciding with Parsons to terminate Seaver, see Mesnick, 950 F.2d at 824. According to Seaver, another Casella employee heard Norford state that they were looking to replace Seaver with someone in their forties—i.e., someone approximately ten years younger than Seaver.[6] Moreover, Norford acknowledged at his deposition that, after Seaver's termination, one of Norford's subordinates reached out to a salesman with another company to gauge that salesman's interest in a sales role at one of the companies Norford oversaw. According to Norford, that company could have been Casella. The salesman was in his thirties. Finally, the person defendants eventually hired pursuant to the June 2020 job posting was approximately forty-five years old.

For these reasons, defendants have not demonstrated that they are entitled to judgment as a matter of law with respect to Count III.

## CONCLUSION

Defendants' motion for summary judgment (doc. no. 18) is granted in part and denied in part. It is granted as to Counts IV through VIII. It is granted as to

---

[6] Although neither party raises this argument, the court notes that Norford's alleged statements may constitute direct evidence of age discrimination, which could affect the burden of proof at trial. See Zampierollo-Rheinfeldt, 999 F.3d at 51-52 (statement from supervisor who decided to terminate the plaintiff that supervisor wanted to "rejuvenate" the team constituted direct evidence of age discrimination); see also Old Dutch Mustard, 560 F. Supp. 3d at 510-11 (contrasting burden of proof when there is direct evidence of discrimination from burden of proof under McDonnell Douglas).

Count I to the extent the claim alleged therein is premised on a theory of harassment or hostile work environment. It is otherwise denied.

The claims remaining for trial are Count I (disability discrimination), Count II (disability retaliation), and Count III (age discrimination).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 10, 2025

cc:    Counsel of Record